IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| EMALEE WAGONER,<br><br>                      Plaintiff,<br><br>vs.<br><br>NANCY DAHLSTROM, *et al.*,<br><br>                      Defendants. | Case No. 3:18-cv-00211-RRB<br><br>**ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT AND RECOMMENDING SETTLEMENT CONFERENCE**<br>**Docket 116 (as amended at Docket 123) and Docket 117 (as amended at Docket 125)** |

## I. INTRODUCTION

Plaintiff, Emalee Wagoner, brings this suit pursuant to 42 U.S.C. § 1983 due to circumstances arising from her incarceration in Alaska pursuant to a state conviction.[1]

---

[1] "Title 42 U.S.C. § 1983, provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any [law] . . . of any State or Territory. . . .'" *Lugar v. Edmondson Oil, Co.*, 457 U.S. 922, 924 (1982) (citing § 1983); *see also* U.S. Const. amend. XIV ("No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."). It has long been established that the purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161, (1992) (*citing Carey v. Piphus*, 435 U.S. 247, 254–57 (1978)). This federal statute "is not itself a source of substantive rights," but provides "a method for vindicating rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

Defendants in this matter include Nancy Dahlstrom, the former commissioner of DOC during the relevant period, whom Plaintiff argues "was personally responsible to create an implement policies and procedures to ensure that inmates receive necessary health care." Other defendants include Adam Rutherford (the Chief Mental Health officer for DOC for most of Plaintiff's time in DOC custody), Laura Brooks (a former DOC Director of Health and Rehabilitation Services during the relevant period), and Robert Lawrence (the Chief Medical Officer of the DOC), whom Plaintiff alleges were "personally responsible for creating and implementing medical operating procedures to ensure inmates received essential health care."[2]

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[3] A party asserting that a fact is undisputed must support such an assertion by citing to materials in the record, including depositions, affidavits or declarations, stipulations, admissions, answers to interrogatories, or other materials.[4] The moving party bears the initial burden of proof for showing that no fact is in dispute.[5] If the moving party meets that burden, then it falls upon the non-moving party to refute with facts that would indicate a genuine issue of fact for trial.[6] An issue is "genuine" where "the evidence is such that a reasonable jury could return

---

[2] Docket 116 at 18; Docket 126.
[3] Fed. R. Civ. P. 56(a).
[4] Fed. R. Civ. P. 56(c)(1).
[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).
[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

*Wagoner v. Dahlstrom, et al.*     Case No. 3:18-cv-00211-RRB
Order Denying Cross Motions For Summary Judgment     Page 2
Case 3:18-cv-00211-RRB   Document 134   Filed 06/01/23   Page 2 of 19

a verdict for the nonmoving party," and a factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."[7] When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party.[8] Summary judgment is appropriate if the facts and allegations presented by a party are merely colorable, or are not significantly probative.[9]

For the reasons set forth below, although both sides make compelling arguments, the Court must deny the pending Motions for Summary Judgment at this time. The Court strongly recommends that, in the interest of justice and the timely resolution of the current disputes, the parties engage in settlement negotiations, for there appear to be strengths and weaknesses on both sides. If so requested, the Court can arrange for a neutral judicial officer to conduct a settlement conference.

### III. DISCUSSION

Plaintiff filed a Motion for Summary Judgment which she later supplemented.[10] Defendants also filed a Motion for Summary Judgment, which Plaintiff opposed, and which Defendants later amended.[11] Additional responses and replies also have been filed.[12]

---

[7] *Anderson*, 477 U.S. at 248.
[8] *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp*, 475 U.S. 574, 587 (1986).
[9] *Anderson,* 477 U.S. at 250; *see also In re Lewis*, 97 F.3d 1182, 1187 (9th Cir. 1996); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1995).
[10] Dockets 116, 123, 124.
[11] Dockets 117,120, 125, 126.
[12] Dockets 128, 129, 130, 131.

*Wagoner v. Dahlstrom, et al.*     Case No. 3:18-cv-00211-RRB
Order Denying Cross Motions For Summary Judgment     Page 3
Case 3:18-cv-00211-RRB   Document 134   Filed 06/01/23   Page 3 of 19

A.  Background

Plaintiff suffers from gender dysphoria ("GD") and, since 2016, identifies as a "male-to-female transgender and transsexual person."[13] She legally changed her name to align with her gender identity in November 2017.[14] She is, and has been since 2012, housed in a male prison. Plaintiff alleges that Defendants showed deliberate indifference to her serious medical needs in violation of the Eighth Amendment, while Defendants deny deliberate indifference and, also, assert that qualified immunity protects them from individual liability.[15] Defendants also assert in their answer that any damages Plaintiff has sustained was due to Plaintiff's own conduct.[16]

Plaintiff filed her initial Complaint in September 2018. She was permitted to amend her Complaint as recently as March 27, 2023, and alleges a failure by various Alaska DOC employees and administrators to have a policy in place regarding transgender prisoners, resulting in "actual deliberate indifference to her serious medical needs, [resulting] in actual harm."[17] Plaintiff brings her claims against each Defendant in both their individual and official capacities, seeking damages as well as declaratory and

---

[13] Docket 122-1 at 4. According to the World Professional Organization for Transgender Health ("WPATH") gender dysphoria is "broadly defined as discomfort or distress that is caused by a discrepancy between a person's gender identity and that person's sex assigned at birth (and the associated gender role and/or primary and secondary sex characteristics). *See generally* wpath.org.

[14] Docket 122-1 at 9; Docket 116 at 6. Plaintiff testified at her deposition that she has identified as a female since 2016. Docket 126, Exhibit 7 at 3.

[15] The United States Supreme Court "has long made clear the standard for claims alleging failure to provide medical treatment to a prisoner—'deliberate indifference to serious medical needs.'" *Ziglar v. Abbasi,* 137 S. Ct. 1843, 1864 (2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

[16] Docket 11.
[17] Docket 122-1.

*Wagoner v. Dahlstrom, et al.*  Case No. 3:18-cv-00211-RRB
Order Denying Cross Motions For Summary Judgment  Page 4
Case 3:18-cv-00211-RRB   Document 134   Filed 06/01/23   Page 4 of 19

injunctive relief.[18] Specifically, she seeks a preliminary and permanent injunction ordering Defendants to begin medical and mental health treatment which conforms to the WPATH Standards of Care,[19] including: providing hormone replacement therapy ("HRT") and sex reassignment surgery; scheduling an evaluation with a "full spectrum transgender clinic" based on the referral of treating physician Dr. Greg Lund; and providing "effective pain management medication to alleviate her chronic pain."[20]

Plaintiff complains that Defendants failed to have a policy in place to ensure that inmates suffering from gender dysphoria would receive necessary health care, and that this failure rose to the level of a "policy of inaction" with respect to in regards to transgender inmates.[21] As a result, she alleges that she was "both denied care and received inadequate care, which resulted in actual, significant, harm to her."[22] She argues that the blanket denial of HRT treatment for several years "is directly attributable to the Defendant's failure to create and implement policy and procedure to ensure that transgender inmates suffering from GD would receive essential health care."[23]

In response, Defendants rely on the Gender Dysphoria Clinical Care Guide

---

[18] *Id*. at 3, 13, 22. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. . . . It is *not* a suit against the official personally, for the real party in interest is the entity." *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 966–67 (9th Cir. 2010). In an "official capacity" suit, seeking injunctive rather than monetary relief, a plaintiff must demonstrate that a policy or custom of the government entity of which the official is an agent was the moving force behind the violation. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). In contrast, individual capacity suits "seek to impose personal liability upon a government official for actions [the official] takes under color of state law." *Id*. at 165.
[19] *See* https://wpath.org/publications/soc.
[20] Docket 122-1 at 22.
[21] Docket 116 at 13.
[22] *Id*.
[23] Docket 116 at 17.

*Wagoner v. Dahlstrom, et al.*     Case No. 3:18-cv-00211-RRB
Order Denying Cross Motions For Summary Judgment     Page 5
Case 3:18-cv-00211-RRB   Document 134   Filed 06/01/23   Page 5 of 19

that the DOC had in place as of July 2017 to counter Plaintiff's argument that they "failed to implement any policies with regard to the treatment of transgender inmates suffering from gender dysphoria."[24] They further claim that the DOC later recognized these guidelines through a new 2022 policy, Policy & Procedure ("P&P") 807.23, which was "specifically intended to address the needs of patients diagnosed with gender dysphoria."[25] But Plaintiff argues that the enactment of P&P 807.23 in 2022 is proof that the DOC was not following its own guidelines, because after five years of denying HRT treatment, Plaintiff's HRT treatment was approved within 60 days of enacting the policy.[26]

Defendants argue that because Plaintiff is now receiving HRT, and that Plaintiff's need for surgical treatment "will be evaluated in the future, after a period of hormone therapy," DOC's current treatment of Plaintiff's GD, which they assert is consistent with community standards, renders Plaintiff's claims moot for lack of a genuine issue of material fact.[27]

**B.   Eighth Amendment**

In *Toguchi v. Chung*,[28] the Ninth Circuit explained that to establish an Eighth Amendment violation, a prisoner must satisfy both the objective and subjective components of a two-part test. First, there must be a demonstration that the prison official deprived the prisoner of the "minimal civilized measure of life's necessities." Second, a

---

[24] Docket 126 at 2, 7. The Gender Dysphoria Clinical Care Guide is found at Docket 108–18 (Exhibit 15).
[25] *Id.* (citing Policy and Procedure 807.23 (*see* Docket 126, Exhibit 4)).
[26] Docket 116 at 17.
[27] Docket 126 at 3.
[28] 391 F.3d 1051, 1057 (9th Cir. 2004).

*Wagoner v. Dahlstrom, et al.*  Case No. 3:18-cv-00211-RRB
Order Denying Cross Motions For Summary Judgment  Page 6
Case 3:18-cv-00211-RRB   Document 134   Filed 06/01/23   Page 6 of 19

prisoner must demonstrate that the prison official "acted with deliberate indifference in doing so." The court further explained that a prison official acts with deliberate indifference "only if the [prison official] knows of and disregards an excessive risk to inmate health and safety."[29] Accordingly, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference."[30]

It is well-established that the government has an obligation to provide medical care to incarcerated individuals, because "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' [which is] proscribed by the Eighth Amendment."[31] "Deliberate indifference to serious medical needs presents a cognizable claim where prison officials deny, delay, or intentionally interfere with medical treatment."[32] Plaintiff alleges such deliberate indifference to her serious medical needs.[33]

Deliberate indifference is a high legal standard. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."[34] For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual

---

[29] *Id.*
[30] *Id.*
[31] *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (internal citation omitted).
[32] *El-Shaddai v. Zamora,* 833 F.3d 1036, 1045 (9th Cir. 2016) (citation and internal quotation marks omitted).
[33] Docket 122-1 at 20.
[34] *Whitley v. Albers,* 475 U.S. 312, 319 (1986) (quoting *Estelle v. Gamble*, 429 U.S. at 103) (emphasis added).

*Wagoner v. Dahlstrom, et al.*      Case No. 3:18-cv-00211-RRB
Order Denying Cross Motions For Summary Judgment      Page 7
Case 3:18-cv-00211-RRB   Document 134   Filed 06/01/23   Page 7 of 19

punishment. At most it is medical malpractice."[35] Likewise, a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference."[36] And "[m]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."[37] Rather, to show deliberate indifference, a plaintiff must show that the course of treatment was "medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to the plaintiff's health."[38] For example, the failure to follow a medical specialist's recommendation may amount to a course of treatment that is medically unacceptable under the Eighth Amendment.[39] Moreover, a "blanket, categorical denial of medically indicated surgery solely on the basis of an administrative policy . . . is the paradigm of deliberate indifference."[40]

### C. Plaintiff's Serious Medical Need

Plaintiff states that "between August 2016 and the end of 2018, she cut her penis tissue more than a dozen times, two of which were attempts at self sex-reassignment

---

[35] *Estelle v. Gamble*, 429 U.S. at 107.
[36] *Hamby v. Hammond,* 821 F.3d 1085, 1092 (9th Cir. 2016) (citations and internal quotation marks omitted).
[37] *Toguchi*, 391 F.3d at 1057 (citation omitted).
[38] *Hamby*, 821 F.3d at 1092.
[39] *See Colwell v. Bannister,* 763 F.3d 1060, 1069 (9th Cir. 2014) (finding that the prison improperly ignored the recommendations of treating specialists in favor of non-specialist, non-treating medical opinions based on administrative policy); *Snow v. McDaniel,* 681 F.3d 978, 988 (9th Cir 2012) (overruled on other grounds) (finding that "a reasonable jury could conclude that the decision of the non-treating, non-specialist physicians to repeatedly deny the recommendations for surgery was medically unacceptable under all of the circumstances.").
[40] *Colwell v. Bannister*, 763 F.3d at 1068 (quotation omitted).

*Wagoner v. Dahlstrom, et al.*      Case No. 3:18-cv-00211-RRB
Order Denying Cross Motions For Summary Judgment      Page 8
Case 3:18-cv-00211-RRB   Document 134   Filed 06/01/23   Page 8 of 19

surgery."[41] She also engaged in self-harm to her testicles on numerous occasions in 2018.[42] She has been hospitalized for emergency treatment as a result and has sustained ongoing damage from these attempts including bleeding, leaking, and infection.[43]

Defendants explain that DOC's Medical Advisory Committee ("MAC") consisting of experts in the areas of mental health, physical medicine, or medical social work, regularly meet to consider medically complex matters, review the providers' recommendations, and approve or deny those recommendations or provide alternative treatment suggestions.[44] "DOC also has a Gender Dysphoria Management committee ("GDMC") designated by the MAC on a case-by-case basis." Defendant Rutherford's affidavit indicates that Plaintiff has undergone a DOC "counseling program designed to assist patients with gender dysphoria," but provides no further details regarding that program.[45]

But Plaintiff alleges that starting in November 2016, she was informed that "the AKDOC does not accom[m]odate outside psychological services for gender dysphoria issues,"[46] and that her requests for medical and psychological treatment were repeatedly denied. She filed numerous grievances. Her requests for HRT allegedly went without response or were denied. She alleges that such denials continued despite the Alaska DOC

---

[41] Docket 122-1 at 4.
[42] *Id.* at 12.
[43] *Id.* at 13–14.
[44] Docket 126, Exhibit 2.
[45] Docket 126, Exhibit 2 at 8.
[46] *Id*. at 5.

*Wagoner v. Dahlstrom, et al.*     Case No. 3:18-cv-00211-RRB
Order Denying Cross Motions For Summary Judgment     Page 9
Case 3:18-cv-00211-RRB    Document 134    Filed 06/01/23    Page 9 of 19

Gender Dysphoria Clinical Care Guide, which was created in September 2017.[47] Plaintiff alleges that despite "dozens of requests for appropriate essential health care to treat her GD," and the filing of nine grievances, the only treatment she was provided "was a series of coping skills workbooks" in February 2018, and treatment with a mental health clinician with no experience in treating patients with GD.[48] Plaintiff claims that in January 2019 she was told the Alaska DOC would not treat her transgender issues "unless and until they become life threatening."[49]

Subsequent to the filing of this action in 2018, Plaintiff states that she continued to self-harm, to request HRT, and to file grievances associated with a lack of treatment plan, lack of appropriate medical supplies, and general denial of any meaningful treatment for gender dysphoria. Defendants' May 6, 2019, grievance denial[50] lends some credence to this complaint, as it concluded that Plaintiff was receiving essential health care only for her "chronic condition resulting from a self-inflicted injury to [her] penis," despite Plaintiff's specific request for a referral to a urologist who is up-to-date on treatments and surgical procedures specifically for *gender dysphoria.*

Plaintiff states that in December 2021, her request for HRT was forwarded to the GDMC and was denied.[51] Plaintiff's Motion for Summary Judgment details her requests and DOC's repeated denials of medical treatment for gender dysphoria dating

---

[47] *See* Docket 108-18.
[48] Docket 116 at 19.
[49] Docket 122-1 at 14.
[50] Docket 126, Exhibit 13.
[51] *Id.* at 16.

*Wagoner v. Dahlstrom, et al.*     Case No. 3:18-cv-00211-RRB
Order Denying Cross Motions For Summary Judgment     Page 10
Case 3:18-cv-00211-RRB    Document 134    Filed 06/01/23    Page 10 of 19

from 2016 through 2022.[52] But Defendants assert no knowledge of attempted self-harm in "several years, since undergoing counseling for gender dysphoria."[53] They allege that she was referred for HRT evaluation in October 2021, and that Defendants Rutherford and Lawrence "began to search for an outside provider with expertise in the field of providing cross-sex hormones to patients with gender dysphoria."[54]

In June 2022 Plaintiff was seen by a urologist, Dr. Lund, who opined that "full spectrum transgender care" was indicated and recommended a referral to a specialty center.[55] Dr. Lund expressly noted that "a specific [gender dysphoria] referral from a physician here is needed, and there has been no help from the Department of Corrections physicians in referral to a center specializing in transgender issues."[56] In July 2022, DOC enacted P&P 807.23 regarding health care for transgender prisoners and Plaintiff began HRT soon thereafter.[57] Defendant Lawrence called Dr. Lund for clarification of his recommendations, and Dr. Lund's July 26, 2022, addendum to his chart notes reflects that "he [Lawrence] further explains constitutional issues regarding elective and necessary medical care in light of an incarcerated individual," prompting Dr. Lund to explain that while lower surgery would be "elective" in terms of *physical* health, he lacked the expertise to opine on *psychological* recommendations regarding long-term health.[58] Accordingly,

---

[52] Docket 116 at 3–10.
[53] Docket 126, Exhibit 2 at 12.
[54] Docket 126, Exhibit 2 at 11.
[55] Docket 122-1 at 17.
[56] Docket 126, Exhibit 14.
[57] Docket 122-1 at 17; Docket 116 at 10; Docket 126 Exhibit 16 (MAC Review and Authorization of Gender Dysphoria Individual Treatment Plan dated August 22, 2022.)
[58] Docket 126, Exhibit 14 at 4.

*Wagoner v. Dahlstrom, et al.*     Case No. 3:18-cv-00211-RRB
Order Denying Cross Motions For Summary Judgment     Page 11
Case 3:18-cv-00211-RRB     Document 134     Filed 06/01/23     Page 11 of 19

Dr. Lund's referral for "full spectrum transgender care" was deemed "unnecessary," and additional pain medication to treat Plaintiff's pain from her injuries was denied.[59] Plaintiff's treating provider at the prison, Jill Cronin, APRN, noted in September 2022 that "no other pain management medications are necessary at this time as patient continues to participate in self-mutilation of genitals which are further causing pain."[60] ANP Cronin continued "tylenol and meloxicam along with supportive underwear and ice PRN."[61] Plaintiff filed a grievance with respect to the full spectrum care, which was also denied.[62] As of November 2022, Plaintiff complained that she was "still being denied essential medical treatment."[63]

### D. Transgender Jurisprudence

Recently, the Ninth Circuit dealt specifically with the issue of gender reassignment surgery of a transgender inmate in Idaho.[64] In *Edmo*, the court found that a transgender prisoner's treating psychiatrist acted with deliberate indifference to the prisoner's serious medical needs, in violation of the Eighth Amendment, when he denied her gender confirmation surgery.[65] The court was unpersuaded by the defendants' argument that "because the defendants provided some care to Edmo, no defendant could have been deliberately indifferent."[66] The court explained that "some medical treatment,

---

[59] Docket 122-1 at 17–18.
[60] Docket 125, Exhibit 17.
[61] *Id.*
[62] Docket 122-1 at 18–19.
[63] Docket 107.
[64] *Edmo v. Corizon, Inc.*, 935 F.3d 757, 793 (9th Cir. 2019).
[65] *Id.* at 792–97.
[66] *Id.*

*Wagoner v. Dahlstrom, et al.*  Case No. 3:18-cv-00211-RRB
Order Denying Cross Motions For Summary Judgment  Page 12
Case 3:18-cv-00211-RRB   Document 134   Filed 06/01/23   Page 12 of 19

even extensive treatment over a period of years, does not immunize officials from the Eighth Amendment's requirements."[67]

Prior to *Edmo*, issues involving transgender inmates' Eighth Amendment rights were not novel in U.S. jurisprudence. For example, the Supreme Court held in 1994 that prison officials may be held liable under the Eighth Amendment for the rape of a transsexual inmate by another inmate if the officials knew that the victim faced a substantial risk of serious harm and they disregarded that risk by failing to take reasonable measures to abate it.[68] In 2000, the Ninth Circuit held that an assault of a transgender prisoner by a prison guard violates the Eight Amendment, regardless of the gender of the rapist or the victim.[69] And in 2015, the Northern District of California found that mental health care and hormone treatments did not preclude a finding that defendants were deliberately indifferent to prisoner's gender dysphoria.[70]

**E. Defenses**

Defendants do not dispute that Plaintiff has sustained self-inflicted injuries, or the timing of the commencement of Plaintiff's HRT after the implementation of DOC P&P 807.24. They do not appear to dispute Plaintiff's serious medical needs. However, Defendants do dispute that they were deliberately indifferent for failing to enact policies,

---

[67] *Id.*, citing *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000) (en banc) (explaining that "[a] prisoner need not prove that he was completely denied medical care" to make out an Eighth Amendment claim); and *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013) ("[J]ust because [officials] have provided De'lonta with some treatment consistent with the GID Standards of Care, it does not follow that they have necessarily provided her with constitutionally adequate treatment.").
[68] *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).
[69] *Schwenk v. Hartford*, 204 F.3d 1187, 1198 (9th Cir. 2000).
[70] *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1120 (N.D. Cal. 2015).

*Wagoner v. Dahlstrom, et al.*     Case No. 3:18-cv-00211-RRB
Order Denying Cross Motions For Summary Judgment     Page 13
Case 3:18-cv-00211-RRB   Document 134   Filed 06/01/23   Page 13 of 19

failing to follow the recommendations of private providers, or failing to provide adequate pain medication.[71] They also assert that qualified immunity protects them from individual liability.

### (1) Qualified Immunity

"State officials are not subject to suit under section 1983 unless they play an affirmative part in the alleged deprivation of constitutional rights."[72] Thus, in order to state a viable civil rights claim against state officials in their individual capacities, allegations of personal participation are required.[73] Liability in an individual capacity suit for money damages can be demonstrated by showing that the official caused the alleged injury.[74] Without allegations of personal participation, the claim must be dismissed.

Additionally, although state officials cannot be held liable for alleged civil rights violations under the theory of *respondeat superior*,[75] "a showing that a supervisor acted, or failed to act, in a manner that was deliberately indifferent to an inmate's Eighth Amendment rights is sufficient to demonstrate the involvement—and the liability—of that supervisor. Thus, when a supervisor is found liable based on deliberate indifference, the

---

[71] Docket 126.
[72] *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987) (citation omitted).
[73] *See Richards v. Harper*, 864 F.2d 85, 88 (9th Cir. 1988).
[74] *Kentucky v. Graham*, 473 U.S. at 166.
[75] *See, e.g., Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (insufficient showing of direct participation by Attorney General or Director of State Prison); *see also* BLACK'S LAW DICTIONARY (11th ed. 2019) ("respondeat superior" is the "doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency."). In other words, defendants cannot be held personally liable merely because they have supervisory authority over other defendants or employees. They can only be held responsible for damages for their own unconstitutional behavior.

*Wagoner v. Dahlstrom, et al.*                                                      Case No. 3:18-cv-00211-RRB
Order Denying Cross Motions For Summary Judgment                  Page 14
Case 3:18-cv-00211-RRB     Document 134     Filed 06/01/23     Page 14 of 19

supervisor is being held liable for his or her own culpable action or inaction, not held vicariously liable for the culpable action or inaction of his or her subordinates."[76]

But government officials sued in their individual capacities pursuant to § 1983 may raise the affirmative defense of qualified immunity. Qualified immunity shields government officials from liability for civil damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[77] "[C]learly established" means that, "at the time of the officer's conduct, the law was 'sufficiently clear that every reasonable official would understand that what he is doing' is unlawful."[78] Qualified immunity "is not available to those sued only in their official capacities."[79] Accordingly, "[q]ualified immunity is only an immunity from a suit for money damages, and does not provide immunity from a suit seeking declaratory or injunctive relief."[80]

Qualified immunity is not absolute immunity, and it does not protect prison officials from violating a constitutional right that is established at the time of the alleged violation.[81]

A qualified immunity analysis consists of two prongs: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's

---

[76] *Starr v. Baca*, 652 F.3d 1202, 1206–07 (9th Cir. 2011).
[77] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982)).
[78] *District of Columbia v. Wesby*, ___ U.S. ___, 138 S. Ct. 577, 589 (2018) (citation omitted).
[79] *Cmty. House, Inc. v. City of Boise, Idaho,* 623 F.3d 945, 965 (9th Cir. 2010).
[80] *Hydrick v. Hunter*, 669 F.3d 937, 939–40 (9th Cir. 2012) (citations omitted).
[81] *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

*Wagoner v. Dahlstrom, et al.* Case No. 3:18-cv-00211-RRB
Order Denying Cross Motions For Summary Judgment Page 15
Case 3:18-cv-00211-RRB   Document 134   Filed 06/01/23   Page 15 of 19

conduct violated a constitutional right; and (2) whether that right was clearly established.[82] "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'"[83]

As explained herein, the rights of transgender inmates to adequate medical care were clearly established at the time this cause of action arose. Moreover, the facts, taken in the light most favorable to Plaintiff, suggest conduct that may have violated Plaintiff's rights to adequate medical care. At a minimum, there remain genuine issues of material fact regarding Plaintiff's requests for care, the nature of any denials, and each Defendants' involvement in those decisions/denials, as well as what constitutes adequate medical care under these circumstances. The Court therefore declines to grant qualified immunity at this point in the litigation. This does not mean that Defendants are culpable or that Plaintiff is entitled to relief. She may not be. It merely means that the matter must be more fully litigated.

### (2) Deliberate Indifference

Defendants rely upon the existence of the 2017 "clinical care guide that provided for a multidisciplinary approach to treating gender dysphoria," and the corresponding 2022 P&P "mirroring th[ose] guidelines" to defeat any claim of deliberate indifference.[84] Defendants also focus on the treatment that Plaintiff *has* received, including

---

[82] *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 967 (9th Cir. 2010).
[83] *City and County of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 611 (2015) (quoting *Ashcroft v. al–Kidd*, 131 S. Ct. 2074, 2085 (2011)).
[84] Docket 126 at 25.

*Wagoner v. Dahlstrom, et al.*     Case No. 3:18-cv-00211-RRB
Order Denying Cross Motions For Summary Judgment     Page 16
Case 3:18-cv-00211-RRB     Document 134     Filed 06/01/23     Page 16 of 19

counseling and initial evaluations by two private urologists. They argue that she "has not clearly brought a claim related to hormone therapy," and allege a lack of evidence that "any of the defendants were subjectively aware that Ms. Wagoner's medical needs with respect to hormone therapy were not being met."[85] Defendants assert that the reason Plaintiff was not initially granted HRT was because of the health concerns and risk of death due to cardiovascular issues . . . in male-to-female transgender inmates."[86]

But Plaintiff questions Defendants' assertion that "health concerns and risk of death" were ever issues, considering that HRT ultimately was provided soon after implementation of P&P 807.23, without any concern for cardiovascular issues.[87] And although Dr. Lund recommended *full spectrum transgender care*, Plaintiff was sent to the Anchorage Neighborhood Health Center for *only* HRT. Plaintiff alleges that the continued lack of receipt of proper care has prompted further self-harm.[88]

"A prisoner need not prove that [s]he was completely denied medical care" to make out an Eighth Amendment claim,"[89] and "just because [officials] have provided [plaintiff] with some treatment consistent with the [Gender Identity Disorder] Standards of Care, it does not follow that they have necessarily provided her with constitutionally adequate treatment."[90] Moreover, the mere existence of a clinical care guide does not absolve Defendants from actual deliberate indifference to Plaintiff's serious medical needs.

---

[85] Docket 126 at 26.
[86] Docket 126 at 12.
[87] Docket 131 at 3.
[88] Docket 123 at 8.
[89] *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000) (en banc).
[90] *De'lonta*, 708 F.3d at 526.

Wagoner v. Dahlstrom, et al.　　　　　　　　　　　　　　　　　　　　　　Case No. 3:18-cv-00211-RRB
Order Denying Cross Motions For Summary Judgment　　　　　　　　　　　　　　　　　Page 17
Case 3:18-cv-00211-RRB　　Document 134　　Filed 06/01/23　　Page 17 of 19

F.  Pain Management

Plaintiff argues that her "chronic and substantial pain qualifies as a serious medical need under the 8th Amendment."[91] Instead of treating Plaintiff's chronic pain, she argues that she is blamed for the self-harm causing the pain.[92] Defendants suggest that Plaintiff is seeking opiates,[93] which is unsupported by the record. Rather, Plaintiff specifically sought pain management for "nerve pain." Again, it is not clear who is right on this issue, but Plaintiff would carry the burden of proof if this matter proceeds to trial.

IV.  CONCLUSION

At this point, Defendants are not entitled to qualified immunity. Further, genuine issues of material fact still exist, which preclude a decision in either party's favor at the summary judgment stage. The record is insufficient for the Court to determine whether Plaintiff's course of treatment, or lack thereof, to alleviate Plaintiff's gender dysphoria was "medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to the plaintiff's health."[94] Nor is it clear whether Defendants should be liable for injuries Plaintiff inflicted upon herself.

The record prevents the Court from determining not only whether Plaintiff is entitled to injunctive/declaratory relief, but also whether each, individual Defendants'

---

[91] Docket 123 at 6, citing *McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir. 1992); *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006).
[92] Docket 123 at 6.
[93] Docket 126 at 4.
[94] *Hamby*, 821 F.3d at 1092.

*Wagoner v. Dahlstrom, et al.*  Case No. 3:18-cv-00211-RRB
Order Denying Cross Motions For Summary Judgment  Page 18
Case 3:18-cv-00211-RRB   Document 134   Filed 06/01/23   Page 18 of 19

actions rose to the level of deliberate indifference to hold them liable in their personal/individual capacities. The Court believes, however, that continued delay is neither in the interest of justice or of the parties. The Court will therefore agree to appoint a neutral judicial officer to conduct a settlement conference and oversee possible settlement negotiations if agreed to by the parties and a timely request is made. Any such request must be made on or before June 23, 2023.

Therefore, Defendant's motion for summary judgment at Docket 117 is DENIED; and Plaintiff's motion for summary judgment at Docket 116 also is DENIED.

IT IS SO ORDERED this 1st day of June, 2023, at Anchorage, Alaska.

*/s/ Ralph R. Beistline*
RALPH R. BEISTLINE
Senior United States District Judge

*Wagoner v. Dahlstrom, et al.* Case No. 3:18-cv-00211-RRB
Order Denying Cross Motions For Summary Judgment Page 19
Case 3:18-cv-00211-RRB   Document 134   Filed 06/01/23   Page 19 of 19