IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| EMALEE WAGONER,<br><br>    Plaintiff,<br><br>vs.<br><br>NANCY DAHLSTROM, et al.,<br><br>    Defendants. | Case No. 3:18-cv-00211-RRB<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION AND FURTHER DISCOVERY**<br>**(Docket 135)** |

## I. INTRODUCTION

  Plaintiff, Emalee Wagoner, brings this suit pursuant to 42 U.S.C. § 1983 seeking damages as well as declaratory and injunctive relief due to circumstances arising from her incarceration in Alaska pursuant to a state conviction. Specifically, Plaintiff alleges deliberate indifference to her serious medical needs.[1] She complains that Defendants failed to have a policy in place to ensure that inmates suffering from gender dysphoria would receive necessary health care, and that this failure rose to the level of a

---

[1] Docket 122-1 at 20. As the Court explained in its prior order, "deliberate indifference to serious medical needs presents a cognizable claim where prison officials deny, delay, or intentionally interfere with medical treatment." *El-Shaddai v. Zamora,* 833 F.3d 1036, 1045 (9th Cir. 2016) (citation and internal quotation marks omitted). It is well established that the government has an obligation to provide medical care to incarcerated individuals, because "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' [which is] proscribed by the Eighth Amendment." *Estelle v. Gamble,* 429 U.S. 97, 103 (1976) (internal citation omitted).

"policy of inaction" in the case of transgender inmates.[2] Plaintiff's Motion for Summary Judgment details her requests and DOC's repeated denials of medical treatment for gender dysphoria dating from 2016 through 2022,[3] despite the existence of the Gender Dysphoria Clinical Care Guide effective September 2017.[4] She seeks a preliminary and permanent injunction ordering Defendants to begin medical and mental health treatment which conforms to the WPATH Standards of Care.[5]

Defendants disputed that they were deliberately indifferent for failing to enact policies, failing to follow the recommendations of private providers, or failing to provide adequate pain medication, relying upon the 2017 clinical care guide and Policy & Procedure ("P&P") 807.23.[6] They allege a lack of evidence that "any of the defendants were subjectively aware that Ms. Wagoner's medical needs with respect to hormone therapy were not being met."[7]

During this period, in 2019, the Ninth Circuit dealt specifically with the issue of gender reassignment surgery of a transgender inmate in *Edmo v. Corizon, Inc.*[8] There the court found that a transgender prisoner's treating psychiatrist acted with deliberate

---

[2] Docket 116 at 13, 18; Docket 126. Plaintiff suffers from gender dysphoria ("GD") and identifies as a "male-to-female transgender and transsexual person."[2] Docket 122-1 at 4. Plaintiff also suffers from injuries associated with self-harm attributed to GD.

[3] Plaintiff alleges that in November 2016 she was informed that "the AKDOC does not accom[m]odate outside psychological services for gender dysphoria issues." Docket 116 at 3–10. Plaintiff claims that she was denied HRT five times, and that in January 2019 she was told the Alaska DOC would not treat her transgender issues "unless and until they become life threatening." Docket 122-1 at 14.

[4] Docket 108-18.

[5] *See* https://wpath.org/publications/soc.

[6] Docket 126 at 25.

[7] *Id*. at 26.

[8] 935 F.3d 757, 793 (9th Cir. 2019).

*Wagoner v Dahlstrom*　　　　　　　　　　　　　　　　　　　　　　　Case No. 3:18-cv-00211-RRB
Order Denying Motion for Reconsideration and Further Discovery　　　　　　　　　　Page 2
Case 3:18-cv-00211-RRB　　Document 140　　Filed 07/13/23　　Page 2 of 9

indifference to the prisoner's serious medical needs, in violation of the Eighth Amendment, when he denied her gender confirmation surgery.[9]

On June 1, 2023, this Court entered an order denying Defendants qualified immunity and finding that genuine issues of material fact exist, precluding summary judgment for either party.[10] Defendants Dahlstrom and Brooks timely moved for partial reconsideration, and alternatively request to reopen discovery.[11]

## II. DISCUSSION

Under the Local Civil Rules for the District of Alaska, a court ordinarily will deny a motion for reconsideration absent a showing of one of the following: manifest error of the law or fact; discovery of new material facts not previously available; or intervening change in the law.[12] Defendants allege a manifest error of law.

### A. Defendant Nancy Dahlstrom

Defendant Dahlstrom was the Commissioner of the Alaska DOC from December 2018 until May 2022.[13] On reconsideration, she argues that there is no evidence that she was aware of or participated in the implementation of the DOC's policies and guidelines, or that she "communicated or in any way urged medical staff to provide or not

---

[9] *Id*. at 792–97. The Ninth Circuit Court of Appeals was unpersuaded by the defendants' argument that "because the defendants provided some care to Edmo, no defendant could have been deliberately indifferent." The court explained that "some medical treatment, even extensive treatment over a period of years, does not immunize officials from the Eighth Amendment's requirements."
[10] Docket 134.
[11] Docket 135.
[12] Local Civil Rule 7.3(h).
[13] The Court takes judicial notice of Lt. Gov. Dahlstrom's official page at Alaska.gov: https://ltgov.alaska.gov/meet-lt-governor-nancy-dahlstrom/ (last visited July 10, 2023).

*Wagoner v Dahlstrom*  Case No. 3:18-cv-00211-RRB
Order Denying Motion for Reconsideration and Further Discovery  Page 3
Case 3:18-cv-00211-RRB   Document 140   Filed 07/13/23   Page 3 of 9

provide any form or treatment to Ms. Wagoner specifically or more generally to inmates with gender dysphoria."[14] Dahlstrom argues that permitting a suit to go forward against her "merely because the plaintiff alleges she is generally responsible for all correctional policies would be to hold her liable under a theory of *respondeat superior*."[15]

As this Court has previously explained, although state officials cannot be held liable for alleged civil rights violations under the theory of *respondeat superior*, "a showing that a supervisor acted, or failed to act, in a manner that was deliberately indifferent to an inmate's Eighth Amendment rights is sufficient to demonstrate the involvement—and the liability—of that supervisor."[16] A supervisory defendant may be held liable if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation."[17] Additionally, the Ninth Circuit has consistently found that a "*lack of affirmative policies or procedures* to guide employees can amount to deliberate indifference," even when there are other general policies in place.[18] It is "the plaintiff's

---

[14] Docket 135 at 3.
[15] *Id* at 4.
[16] Docket 134 at 14–15 (citing *Starr v. Baca*, 652 F.3d 1202, 1206–07 (9th Cir. 2011); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)).
[17] *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).
[18] *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1189 (9th Cir. 2006) (citing cases) (emphasis added). *See also Berry v. Escobar*, 576 F. Supp. 3d 689, 692–93 (N.D. Cal. 2021) (citing *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir. 2010)); and *Hyun Ju Park v. City & Cty. of Honolulu*, 952 F.3d 1136, 1141 (9th Cir. 2020) (A plaintiff "must . . . demonstrate that his deprivation resulted from an official policy or custom established by a . . . policymaker possessed with final authority to establish that policy," or that or that the department "through inaction, failed to implement adequate policies or procedures to safeguard" the constitutional rights of jail detainees.).

*Wagoner v Dahlstrom* Case No. 3:18-cv-00211-RRB
Order Denying Motion for Reconsideration and Further Discovery Page 4
Case 3:18-cv-00211-RRB   Document 140   Filed 07/13/23   Page 4 of 9

burden is to establish 'that the injury would have been avoided' had proper policies been implemented."[19]

Plaintiff's Complaint specifically alleges a failure to "create and implement policies and procedures to ensure that inmates receive necessary health care" with respect to transgender issues.[20] Dahlstrom's argument that there is "no evidence that she was aware of or participated in the implementation of the DOC's policies and guidelines," is puzzling, as DOC's P&Ps are generally approved by the current Commissioner.[21] Moreover, P&P 807.23, which Defendants note was "specifically intended to address the needs of patients diagnosed with gender dysphoria,"[22] was implemented on July 5, 2022,[23] just weeks after Defendant Dahlstrom ceased working as the DOC Commissioner, four years after Plaintiff filed her Complaint, and three years after the Ninth Circuit's decision in *Edmo*. Notably, after years of denials under Dahlstrom, Plaintiff's HRT treatment was approved within 60 days of enacting the new policy under Dahlstrom's replacement.[24]

Dahlstrom fails to show a manifest error of law, and her motion for reconsideration is accordingly DENIED.

---

[19] *Long*, 442 F.3d at 1190 (quoting *Oviatt v. Pearce,* 954 F.2d 1470, 1478 (9th Cir. 1992)).
[20] Docket 116 at 18; Docket 126.
[21] *See* generally https://doc.alaska.gov/commissioner/policies-procedures (last visited July 11, 2023).
[22] Docket 126 at 2, 7.
[23] DOC P&P 807.23. *See* Docket 126, Exhibit 4.
[24] Docket 116 at 17.

*Wagoner v Dahlstrom*                                                                    Case No. 3:18-cv-00211-RRB
Order Denying Motion for Reconsideration and Further Discovery            Page 5
Case 3:18-cv-00211-RRB    Document 140    Filed 07/13/23    Page 5 of 9

## B. Defendant Brooks

Defendant Laura Brooks argues that although she sat on the Medical Advisory Committee ("MAC"), there is no evidence that she was otherwise personally involved in the case. "Absent some evidence that Ms. Brooks was aware Ms. Wagoner's treatment was inadequate and she acquiesced to that unconstitutional treatment, the court should dismiss Ms. Brooks as a defendant."[25]

Plaintiff alleges that Defendant Brooks was the "Health Care Administrator" who was "responsible for the development and administration of all health care policies and programs for the AKDOC," although Defendants deny this in their Answer to the Second Amended Complaint.[26] While the Motion for Reconsideration suggests that Brooks was merely a nurse on a committee that did not recommend hormone therapy,[27] it is public information that Brooks was the Deputy Director, and later the Director, of Health and Rehabilitation Services for the DOC. The Court takes judicial notice of the publicly available P&P 801.01, entitled Health Care Organization and Administration, dated December 22, 2016.[28] It states: "The Deputy Director of [the division of Health and Rehabilitation Services] shall act as the Department's Health Care Administrator (HCA) and shall arrange for all levels of health care. The HCA is responsible to ensure quality,

---

[25] Docket 135 at 4.
[26] Docket 122-1, ¶ 5; Docket 127.
[27] Docket 135 at 4.
[28] All P&P's may be found at https://doc.alaska.gov/commissioner/policies-procedures (last visited July 11, 2023).

*Wagoner v Dahlstrom*     Case No. 3:18-cv-00211-RRB
Order Denying Motion for Reconsideration and Further Discovery     Page 6
Case 3:18-cv-00211-RRB     Document 140     Filed 07/13/23     Page 6 of 9

accessible and timely health care services for prisoners," to include serving as a core member of the Medical Advisory Committee (MAC).

Defendant Brooks also fails to show a manifest error of law, and her motion for reconsideration is accordingly DENIED.

**C.   Additional Discovery**

Finally, Defendants complain that after the close of discovery, Plaintiff amended her complaint to add a new claim related to pain management. Plaintiff alleges that her "chronic and substantial pain qualifies as a serious medical need under the 8th Amendment."[29] She states that subsequent to filing this action in 2018, she continued to self-harm. But Defendants argue that Plaintiff has not shown that any Defendant was personally aware her pain management medication was not being adequately managed, and that "[b]eyond broad generalized complaints, the defendants do not know what Ms. Wagoner is specifically alleging in this regard."[30]

This statement is belied by the record. Defendants' May 6, 2019, grievance denial concluded that Plaintiff was receiving essential health care for her "chronic condition resulting from a self-inflicted injur[ies]," indicating awareness of Plaintiff's chronic pain.[31] But Plaintiff complains that instead of treatment for her chronic pain, she

---

[29] Docket 123 at 6 (citing *McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir. 1992); *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006)).

[30] Docket 135 at 5. Defendant Rutherford asserted no knowledge of attempted self-harm in "several years, since undergoing counseling for gender dysphoria." Docket 126, Exhibit 2 at 12.

[31] Docket 126, Exhibit 13.

*Wagoner v Dahlstrom*  
Order Denying Motion for Reconsideration and Further Discovery  
Case No. 3:18-cv-00211-RRB  
Page 7  
Case 3:18-cv-00211-RRB   Document 140   Filed 07/13/23   Page 7 of 9

is blamed for the self-harm causing the pain.[32] This allegation is supported by the record, where Plaintiff's treating provider, Jill Cronin, APRN, noted as recently as September 2022 that despite the fact that Plaintiff *continued* "to participate in self-mutilation of genitals which are further causing pain," that "no other pain management medications are necessary at this time."[33] Additional pain medication beyond Tylenol and meloxicam was denied.[34]

Defendants argue that the Court "should find that Ms. Wagoner has not presented sufficient evidence to proceed to trial on the pain management claim or should reopen discovery to permit discovery on the claim that was not raised until after discovery had closed."[35] While factual disputes may exist regarding Plaintiff's pain, it is unclear what additional discovery would be required. Defendants possess Plaintiff's medical records which no doubt detail the nature of the injuries associated with Plaintiff's attempts to modify her genitalia after the denial of gender-affirming surgery. Treating providers are clearly aware of Plaintiff's complaints of pain. Moreover, compelling discovery is not a proper request in a Motion for Reconsideration.

Should Defendants wish to file a motion to reopen discovery on the topic of Plaintiff's alleged pain, they should include a complete description of the nature of that discovery, including but not limited to the interrogatories, requests for admission, or requests for production Defendants wish to serve.

---

[32] Docket 123 at 6.
[33] Docket 126-17 .
[34] *Id*.
[35] Docket 135 at 5.

*Wagoner v Dahlstrom*   Case No. 3:18-cv-00211-RRB
Order Denying Motion for Reconsideration and Further Discovery   Page 8
Case 3:18-cv-00211-RRB   Document 140   Filed 07/13/23   Page 8 of 9

## III. CONCLUSION

In light of the foregoing, Defendants' Motion for Reconsideration is DENIED. Defendants' request for additional discovery on the issue of pain is DENIED without prejudice. Any motion for additional discovery shall be filed within 14 days of the date of this order.

IT IS SO ORDERED this 13th day of July, 2023, at Anchorage, Alaska.

                                         */s/ Ralph R. Beistline*
                                         RALPH R. BEISTLINE
                                         Senior United States District Judge

*Wagoner v Dahlstrom* — Case No. 3:18-cv-00211-RRB
Order Denying Motion for Reconsideration and Further Discovery — Page 9
Case 3:18-cv-00211-RRB   Document 140   Filed 07/13/23   Page 9 of 9